UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———

NO. 21-10354-WGY-13

———

UNITED STATES

v.

WILTER RODRGIUES
Defendant

———

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant Wilter Rodrigues submits this Sentencing Memorandum to assist the Court in fashioning an appropriate sentence for the defendant. The defendant asks that the Court impose a 42 month sentence.

**Introduction**

This is one of the more tragic cases that counsel has handled in his lengthy career in this Court.

The defendant is now 39 years old. On August 5, 2021, the defendant participated in the sale of 41 grams of crack to a cooperator with his brother James. After that sale, the defendant's family intervened and persuaded the defendant to address his long-standing substance use issue. He entered a drug treatment program and was sober for the next eight months. During that time, he was employed and did not engage in criminal activity. He was not arrested when the indictment was returned. He heard about it and turned himself in to the Marshals at the courthouse on April 25, 2022.

The defendant was detained until his release by this Court in July 2023. Following his

release, he completed an in-patient drug treatment program at Transitions Transitional in Mattapan. In November 2023, he went from Transitions Transitional to Hope House. While at Hope House, he secured employment. He continued drug treatment. He obtained mental health counseling. And importantly, he received medication that treated his mental health issues. After graduating from Hope House in February 2024, he entered a sober house. He continued his employment, his drug counseling, his mental health treatment, and his medications.

He participated in the Probation Department's Restorative Justice Program on May 23 and 24, 2024. Shortly after completing the RJ program, he submitted his application to the RISE program and changed his please to guilty. He was accepted into the RISE program in Worcester in August 2024.[1] He attended each monthly session until his arrest by Boston Police in April 2025.

During his time in RISE

- He maintained his employment with a scaffolding company.

- He completed a fatherhood program

- He completed a financial literacy program

- He began attending GED - HiSET classes

- He remained drug-free and attended drug treatment

On April 7, 2025, the defendant's probation officer contacted counsel and expressed concern about defendant's behavior and his need to resume mental health treatment. It turns out that because of his employment, and working overtime, he lost his Mass Health benefits. He stopped going to therapy and his mental health medical prescription lapsed. Counsel spoke to the defendant on April

---

[1] He could not participate in the Boston RISE program because counsel's family member is involved in the Boston RISE program. Participating in the Worcester program was much more difficult, given the hour-long commute to Worcester.

8, the following day. Sadly, before the defendant could re-establish his therapeutic relationship and resume his medication, he experienced a mental health crisis and relapsed to using crack.[2/] That led to his arrest by Boston Police of April 12, 2025.

**The Defendant Is Not A Career Offender**

Counsel recognizes that the Court has studied the issue of whether Massachusetts cocaine distribution offense during a certain period of time count for career offender purposes.

The two possible predicates arose from cases in the Boston Municipal Court and the Dorchester District Court, both charging him with possessing with intent to distribute and distribution of tiny amounts of class B controlled substances.

- In the BMC case, No. 1901-CR-5120, the defendant sold one plastic bag of drugs for $19. When arrested, he possessed 13 similar bags.

- In the Dorchester case, No. 1707-CR-2281, state police conducted a car stop of the defendant. They retrieved a plastic bag of drugs that weighed about 15 grams.

Massachusetts possession with intent to distribute class B is no longer a career offender predicate. This is so because the definition of a class B controlled substance in the Massachusetts statute, Mass. Gen. Laws ch. 94C, § 31, is broader than the definition in the federal statute, 21 U.S.C. § 802. Massachusetts includes within its definition a derivative of cocaine – Ioflupane I[123] – that federal law does not. Ioflupane I[123] was removed from the federal definition in 2015.

In assessing whether a prior conviction is a controlled substance offence under the guidelines, the court must use the categorical approach. *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021). In that case, the First Circuit held that the Massachusetts definition of marijuana was

---

[2/] As discussed in the presentence report, the defendant has a diagnosis of post-traumatic stress disorder and bipolar disorder.

overbroad because it included hemp, which is not included within the federal definition. Under the categorical approach, the court had to assume that the conviction involved the least serious substance – hemp – regardless of the facts of the actual case.

The probation department disagrees, and cites an inapplicable case, *United States v. Doe*, 49 F.4th (1st Cir. 2022)(sic). Counsel cannot find such a case. There is a First Circuit case applying the modified categorical approach. *United States v. Moran-Stenson*, 115 F.4th 11 (2024). That case, however, involved a drug conviction from Maine state court. The First Circuit used the modified categorical approach approved in *Mathis v. United States*, 136 S. Ct. 2243 (2016), and held that under Maine law the controlled substance statute is divisible, and thus under the modified categorical approach, the predicate offense is not broader than the federal definition.

Here, neither the government nor the probation office has engaged in the modified categorical approach, and the Court should determine that neither state court conviction is a predicate for career offender purposes. Indeed, in the Dorchester case, No. 1707-CR-2281, the defendant was charged with trafficking in less than 36 grams of cocaine. The charge was reduced to possession with intent to distribute a class B controlled substance. Thus, even under the modified categorical approach, the Dorchester case would not count. See Exhibit 1.

**The Maximum Punishment Is Twenty Years**

The probation officer claims that the maximum punishment is forty years because the count contains an allegation that the conspiracy to distribute cocaine involved more than 500 grams of cocaine. At the change of plea, however, it was made clear that the defendant was only pleading guilty to conspiracy to distribute cocaine base, and had no involvement in a cocaine conspiracy. Thus, the maximum term of imprisonment is 20 years.

**The Court Should Calculate the Powder Guidelines**

Throughout this case, until the administration changed earlier this year, the Department of Justice agreed that the disparity between the crack and powder guidelines was unfair and not based on any scientific basis. That is where things stood when the defendant changed his plea to guilty in July 2024. If the defendant is in criminal history category IV, then his guideline sentencing range for powder would be 15 to 21 months (base offense level 12, less 2 for acceptance, yields a total offense level of 10). The guideline sentencing range for crack would be 57 to 71 months. Counsel notes that this is the approach the government took in James Rodrigues' sentencing memo, even though it was filed after the change of administration. See Document 1008, footnote 1, adhering to plea agreement to use the powder guidelines.

**The Court Should Sentence the Defendant to 42 Months**

The Court should sentence the defendant to 42 months. Counsel chose this recommendation for several reasons. It strikes a balance between the crack and powder guidelines. It recognizes that the defendant made tremendous strides while on release in this case. And it is comparable to several other sentences in this case. This defendant is somewhat unique because he was not charged with a RICO offense.

Take James Rodrigues, the defendant's brother. He received a sentence of 42 months. He was charged with RICO. He admitted to distributing more than 500 grams of cocaine. He was present when Afonseca sold a pistol to the cooperator. And he engaged in a number of other sales of drugs. It is true that he was in criminal history category I.

To be sure, the defendant has a lengthy, serious record. He has a prior federal conviction for felon in possession. But Dorchester and Boston Municipal drug convictions, while serious, are relatively minor. They are certainly not worthy of a double digit sentence.

5

The defendant made great progress while on release and in RISE. Sadly, he went off his medication and relapsed. He has demonstrated that he has the capacity to lead a law-abiding life. While he merits some incarceration, the Court should factor in his efforts at self-improvement and not condemn him to a lengthy period in prison.

Respectfully submitted

WILTER RODRIGUES

By his counsel

/s/ Charles W. Rankin

_____
Charles W. Rankin
BBO No 411780
Rankin & Sultan
1666 Massachusetts Avenue, Suite P-16
Lexington, MA 02420
(617) 720-0011

July 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the Electronic Filing System (CM/ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on July 21, 2025.

/s/Charles W. Rankin
Charles W. Rankin